IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BCD FARMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CV25 |
| | ) | |
| vs. | ) | |
| | ) | |
| CERTIFIED ANGUS BEEF, LLC, | ) | **MEMORANDUM AND ORDER** |
| ANGUS PRODUCTIONS, INC., and | ) | |
| ANGUS JOURNAL, | ) | |
| | ) | |
| Defendants. | ) | |

Before the court is the defendants' renewed motion to dismiss the plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Filing No. 19).[1] The court, having considered the motion, the plaintiff's response, the defendants' reply, and the relevant materials and law, now determines that the defendants' motion should be denied, in part, and granted, in part.

**Background**

Plaintiff, BCD Farms, Inc. ("BCD"), is a Montana corporation. See Amended Complaint at ¶¶ 1-3. The defendant Certified Angus Beef, LLC ("CAB") is an Ohio limited liability company and defendant Angus Productions, Inc. ("Angus Productions") is a Missouri corporation which publishes the Angus Journal. Id.[2]

---

[1] Defendants had moved to dismiss the plaintiff's original complaint on the grounds that it did not meet the requirements of Fed. R. Civ. P. 9(b). See Filing No. 17. After reviewing the plaintiff's original complaint, the court determined that it failed to comply with Rule 9(b) and granted leave to the plaintiff to file an amended complaint. Id. Accordingly, the court denied the defendants' motion to dismiss without prejudice to reassertion after the filing of the plaintiff's amended complaint. Id.

[2] The plaintiff originally filed the instant action in the District Court of Rock County, Nebraska. See Amended Complaint ¶¶ 1-5 and Notice of Removal, Filing No. 1. The defendants, however, removed the case to this court based on diversity jurisdiction. Id. The plaintiff and defendants have significant contacts with the State of Nebraska. Id.

BCD alleges that CAB made fraudulent representations in the January 2001 edition of Angus Journal about Sandhills Cattle Feeding, Inc. ("Sandhills") and its facilities. See Amended Complaint at ¶¶ 6-10. Specifically, BCD alleges that CAB stated: (1) "[Sandhills] has some of the best I've seen for calves. He's got room for 6,500 head, but never packs it so full that he can't sort cattle to another pen for better results" and (2) "[Sandhills] targets CAB with every pen and gets phenomenal results – really consistent closeouts." *Id.* BCD alleges that CAB made these statements notwithstanding its knowledge that Sandhills had been failing to comply with its licensing guidelines. *Id.* According to BCD, CAB made these statements public in the Angus Journal, despite its knowledge that, from July 1999 until February 1, 2002, Sandhills had failed to comply with the licensing requirements of "timely submission of paperwork and fees associated with cattle enrollments, carcass and performance data, ear tags . . . etc." *Id.* BCD specifically states that, in terminating Sandhills' license, CAB wrote to Sandhills on February 1, 2002, stating:

> Since licensing in July 1999, the inability of Sandhills Cattle Feeding, Inc. to operate within the guidelines of the Feedlot Licensing Program and respond to essential issues in a timely manner has created a level of concern that compromises the ability of our two organizations to work together effectively. . . . As a result, Certified Angus Beef LLC is exercising its right to terminate the licensing agreement with Sandhills Cattle Feeding, Inc.

*Id.*; Exhibit B. BCD claims that, despite knowledge of Sandhills' failure to comply with the license requirements, CAB made those statements about Sandhills. *Id.* BCD asserts CAB knew the statements it published to be false. *Id.*

BCD also alleges that CAB made those statements with the intention that BCD would rely upon them. *Id.* According to BCD, the Angus Journal published and distributed those statements in its January 2001 edition to individuals and entities, like BCD, in the

2

livestock industry.  *Id.* BCD asserts that it shipped 1,432 head of calves to Sandhills in November 2001 because it relied on the Angus Journal statements.  *Id.*  BCD alleges that it declined offers from other feedlots to purchase and/or feed its calves and that it shipped its calves to Sandhills.  *Id.*  BCD states that up to that point, it had never shipped cattle to Sandhills.  *Id.*  According to BCD, its reliance on defendants' statements has resulted in damages.  *Id.*  Specifically, BCD alleges that it has not received carcass data or a performance record on its calves.  BCD also alleges that approximately 385 of its calves are missing.  *Id.*  BCD has filed this lawsuit against defendants claiming that it suffered damages as a result of their fraudulent misrepresentations.

As previously stated, the defendants moved to dismiss the plaintiff's original complaint on the grounds that it did not meet the requirements of Fed. R. Civ. P. 9(b).  *See* Filing No. 17.  However, after reviewing the plaintiff's original complaint, the court determined that BCD failed to comply with Rule 9(b) and granted leave to the plaintiff to file an amended complaint.  *Id.*  The plaintiff has filed an amended complaint and the defendants have reasserted their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  The defendants contend that the plaintiff's amended complaint still fails to state a claim upon which relief could be granted.  The court now turns to the examination of the defendants' motion.

BCD alleges that defendants Angus Productions, Inc. and Angus Journal published statements they knew to be fraudulent.   As a result, plaintiff incurred damages in excess of $500,000.00.

3

**Rule 12(b)(6) Standard**

For the court to dismiss a complaint under Rule 12(b)(6), the court considers all the facts alleged in the complaint as true, and construes the pleadings in the light most favorable to the plaintiff. *Schmedding v. Tnemec Co.,* 187 F.3d 862, 864 (8th Cir. 1999). A complaint is successfully challenged if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* Relief is granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Id.* However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal. *Briehl v. Gen. Motors Corp.,* 172 F.3d 623, 627 (8th Cir. 1999).

Plaintiff's claims against the defendants are based on fraud; thus, pursuant to Rule 9(b), plaintiff must aver the "circumstances" constituting the fraud with particularity. *See Commercial Property Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639 (8th Cir. 1995).

**Discussion**

In this case, defendants contend that plaintiff's amended complaint should be dismissed because it fails to properly allege the elements necessary to maintain an action for fraudulent misrepresentation. To maintain an action for fraudulent misrepresentation, a plaintiff must allege and prove that: (1) a representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) it was made with the intention that the plaintiff should rely upon it; (5) the plaintiff reasonably did so rely; and (6) that the plaintiff suffered damage as a result. *Precision Enterprises, Inc. v. Duffack Enterprises,*

4

*Inc.,* 710 N.W.2d 348, 354 (Neb. 2006); *Nebraska Nutrients, Inc. v. Shepherd,* 261 Neb. 723, 747, 626 N.W.2d 472, 495 (2001).

The defendants' initial contention is that BCD's amended complaint fails to properly allege that defendants made false representations. *See* defendants' brief at 4-6, Filing No. 19. The amended complaint, however, states that CAB made the following representations as to the reputation of Sandhills' facilities: (1) "[Sandhills] has some of the best I've seen for calves. [Sandhills] got room for 6,500 head, but never packs it so full that he can't sort cattle to another pen for better results" and (2) "[Sandhills] targets CAB with every pen and gets phenomenal results – really consistent closeouts." *See* Amended Complaint at ¶¶ 6-10. In its complaint, BCD alleges CAB knew these representations to be false because it had knowledge that Sandhills had been failing to comply with CAB's guidelines for the last two years. *Id.* Specifically, BCD alleges that CAB knew Sandhills had failed to comply with the "timely submission of paperwork and fees associated with cattle enrollments, carcass and performance data, ear tags . . . etc." *Id.*

The defendants also contend that BCD's amended complaint fails to properly allege that defendants made the statements with the intention that BCD would rely upon them. *See* defendants' brief at 6-8, Filing No. 19. The amended complaint, however, alleges that CAB made the false statements with the intention that BCD would rely upon them. *See* Amended Complaint at ¶¶ 13-14. In its complaint, BCD asserts that CAB published the statements in the Angus Journal, which is distributed to individuals and entities, like BCD, in the livestock industry. *Id.* BCD specifically alleges that, relying on those statements, it shipped 1,432 heads of calves to Sandhills in November 2001. *Id.* BCD specifically asserts that it declined offers by other feedlots to purchase and/or feed its calves and that

it shipped its calves to Sandhills because it relied on those statements. *Id.* BCD alleges that up to that point, it had never shipped cattle to Sandhills. *Id.*

Considering the complaint in the light most favorable to BCD and keeping in mind that to successfully challenge BCD's complaint, defendants must show that BCD can prove no set of facts in support of its claims which would entitle it to relief, the court determines that BCD's amended complaint sufficiently alleges: (1) that CAB made representations, which it knew to be false; and (2) that CAB made those representations with the intent that BCD would rely upon them.[3] In addition, the court determines that BCD's complaint also sufficiently alleges that BCD suffered damages as a result of CAB's representations. See Amended Complaint at ¶¶ 14-16. Consequently, the court determines that BCD has properly claimed the elements required to maintain an action for fraudulent misrepresentation with respect to CAB. *Nebraska Nutrients,* 261 Neb. at 747.

Furthermore, the court also determines that, with respect to CAB, the amended complaint meets the requirements of Fed. R. Civ. P. 9(b). BCD's amended complaint states the "circumstances" constituting its fraudulent misrepresentation claim with sufficient particularity. *Commercial Property Inv., Inc. v. Quality Inns Int'l, Inc.,* 61 F.3d 639, 644 (8th Cir. 1995). It states "the time, place and contents of [the] false representations, as well as

---

[3] Defendants cite *Moses.Com Securities, Inc. v. Comprehensive Software Systems, Inc.,* 406 F.3d 1052 (8th Cir. 2005) to support their argument that BCD could not have reasonably relied on CAB's statements about Sandhills. However, that case, which applied Missouri law, is distinguishable from the case at hand. In *Moses.Com*, a plaintiff claimed that a defendant engaged in fraud when it made certain remarks about a co-defendant in a press release. *Moses.Com,* 406 F.3d at 1064-65. The plaintiff claimed that, relying on the press release, it entered into a business relationship with a seller of software (co-defendant). *Id.* The Eighth Circuit, in granting defendant's motion to dismiss, noted that plaintiff could not have relied on the press release in initially deciding to enter into a business relationship with the seller because the press release was issued months after plaintiff entered into a business relationship with the seller. *Id.* Here, unlike *Moses.Com*, CAB made its statements before BCD entered into business with Sandhills. Nothing in the pleadings indicates that BCD had a business relationship with Sandhills prior to the release of CAB's statements.

the identity of [who made] the misrepresentation and what was . . . given up thereby." *Id*. In other words, the amended complaint provides the "who, what, when, where, and how" with respect to the circumstances of the fraud. See *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990).

The court, however, determines that BCD's amended complaint fails to properly state a claim for fraudulent misrepresentation with respect to defendants Angus Productions and Angus Journal. BCD's amended complaint fails to properly state the "circumstances" constituting the fraudulent claim with particularity. The amended complaint does not indicate specific facts to ascertain what or how these defendants knew CAB's representations to be false. Consequently, it fails to state a claim upon which relief could be granted. As stated above, a complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal. *Briehl,* 172 F.3d at 627.

THEREFORE, IT IS ORDERED that defendants' renewed motion to dismiss the plaintiff's amended complaint, Filing No. 19, is denied, in part, and is granted, in part. Defendants' motion is denied with respect to CAB; however, defendants' motion is granted with respect to Angus Productions and Angus Journal.

DATED this 6th day of September, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge